UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------- X

                        :

DARREN LAWRENCE PETTY,         :

                        :

             Plaintiff,  :

                        :

           v.          :

                        :

CITY OF NEW YORK, *et al.*,     :

                        :

          Defendants. :

                        :

--------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: November 25, 2014

10 Civ. 8581 (KPF)

OPINION AND ORDER

KATHERINE POLK FAILLA, District Judge:

      Plaintiff Darren Lawrence Petty tried repeatedly, over a period of years, to secure employment with the City of New York as a police officer or correction officer.  In his first few applications, Petty acknowledged that he had been arrested on more than one occasion; he was disqualified in each instance after psychological examinations indicated that he was unsuited to be a police officer.  Petty then changed tack, omitting reference in subsequent applications to his prior arrests and his prior unsuccessful applications; these efforts, too, failed for various reasons.  Petty then brought a lawsuit against Defendants, the City of New York and several of its employees and municipal agencies, claiming discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"); the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12112 to 12117 (the "ADA"); the New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 297 (the "NYSHRL"); and the New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 to

8-131 (the "NYCHRL"). Defendants have moved for summary judgment on all of Plaintiff's claims. For the reasons set forth below, Defendants' motion is granted in its entirety.

## BACKGROUND[1]

Plaintiff sought employment with the City of New York (the "City") beginning in 2003. He first sought employment as a police officer with the

---

[1]   Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York (the "Local Rules") requires a party moving for summary judgment to submit a "separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." Local Rule 56.1(a). The movant's asserted facts are deemed to be admitted unless specifically controverted by the statement served by the opposing party. Local Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a corresponding numbered paragraph in the statement required to be served by the opposing party."); *id.* at 56.1(d) ("Each statement by the movant or opponent ... controverting any statement of material fact[] must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."). *Pro se* litigants are "not excused from meeting the requirements of Local Rule 56.1." *Wali* v. *One Source Co.*, 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009).

Defendants filed a Rule 56.1 Statement on March 4, 2014 ("Defendants' 56.1 Statement" or "Def. 56.1"). (Dkt. #37). Plaintiff's Memorandum of Law in Opposition to Defendants' motion for summary judgment ("Plaintiff's Opposition" or "Pl. Opp.") (Dkt. #45) is, in part, a counterstatement to Defendants' 56.1 Statement. It includes both legal argument and responses to some — but certainly not all — of the numbered paragraphs in Defendants' Rule 56.1 Statement. Despite Plaintiff's incomplete compliance with the Local Rules, the Court retains discretion "to consider the substance of the plaintiff's arguments." *Wali*, 678 F. Supp. 2d at 178 (citing *Holtz* v. *Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) ("[W]hile a court is not required to consider what the parties fail to point out in their Local Rule 56.1 Statements, it may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement." (internal quotation marks omitted))); *see also Hayes* v. *Cnty. of Sullivan*, 853 F. Supp. 2d 400, 406 n.1 (S.D.N.Y. 2012) ("In light of Plaintiff's *pro se* status, the Court overlooks his failure to file a Local Rule 56.1 Statement and conducts its own independent review of the record.").

The facts stated herein are drawn from Defendants' Rule 56.1 Statement; the exhibits attached to the Declaration of Cindy Switzer ("Switzer Declaration" or "Switzer Decl.") (Dkt. #39); Plaintiff's Opposition (Dkt. #45); and Plaintiff's November 8, 2013 deposition ("Petty Dep."), the transcript of which is included as Exhibit B to the Switzer Declaration (Dkt. #39-2). For convenience, Defendants' Memorandum of Law in Support of Defendants' Motion for Summary Judgment (Dkt. #40) is referred to in this Opinion as "Def. Br.," and Defendants' Reply Memorandum of Law in Further Support of Defendants' Motion for Summary Judgment (Dkt. #47) is referred to as "Def. Reply."

City's Police Department (the "NYPD"); he subsequently sought employment as a correction officer with the City's Department of Correction (the "DOC").  (Def. 56.1 ¶ 1).  In connection with his applications, Plaintiff passed several civil service examinations for the positions of police officer and correction officer.  (*Id.* at ¶ 2).  Because he passed these exams, Plaintiff was placed on civil service "eligible lists" and was permitted to participate in further stages of the application process.  (*Id.*).  Plaintiff's efforts in securing these jobs were ultimately unsuccessful.  (*Id.* at ¶¶ 13, 30, 46, 99).

Because establishing a complete timeline of the allegedly discriminatory conduct is critical to the instant motion, the Court will address each of Plaintiff's NYPD and DOC applications in detail.

## A.   The NYPD Applications

### 1.   Plaintiff's 2003 Application

Plaintiff first applied to the NYPD in 2003.  (Def. 56.1 ¶¶ 6-7).  He participated in every aspect of the application process, including the medical exam, psychological exam, agility test, and background investigation.  (*Id.* at ¶ 6).  Plaintiff took the psychological written test on February 10, 2003, and was interviewed by a psychologist on February 13, 2003.  (*Id.* at ¶ 7).  As part of the written psychological test, Plaintiff completed a Biographical Data Sheet.  (Def. 56.1 ¶ 8; Switzer Decl., Ex. E)  In response to one of the questions on the Biographical Data Sheet, Plaintiff indicated that he had been arrested twice — once for possession and sale of narcotics, and once for assault.  (Def.

56.1 ¶¶ 8-9).  Plaintiff also indicated that the charges in both cases had been dismissed.  (*Id.* at ¶ 9).

Following Plaintiff's psychological exam, the interviewing psychologist rejected Plaintiff as psychologically unsuited for police officer work.  (Def. 56.1 ¶ 11).  A supervising psychologist sustained the interviewing psychologist's decision to reject plaintiff as psychologically unsuited for police officer work after reviewing Plaintiff's record.  (*Id.* at ¶ 12).  On August 12, 2003, the NYPD sent Plaintiff a letter by certified mail, with return receipt requested, informing Plaintiff that he had not met the requirements for the position of police officer and had been disqualified based upon his psychological tests and interview. (*Id.* at ¶ 13; Switzer Decl., Ex. G).[2]  The letter also included instructions on how to appeal this determination.  (Def. 56.1 ¶ 16).  Although the disqualification letter was sent to the address Plaintiff had listed on his NYPD application form, it could not be delivered to the Plaintiff and was instead returned to the NYPD as "unclaimed" mail.  (Def. 56.1 ¶¶ 14, 17; Switzer Decl., Ex. E, G).

### 2. Plaintiff's 2005 Application

Plaintiff next applied to the NYPD in 2005.  (Def. 56.1 ¶ 23).  Plaintiff took the psychological written test on January 11, 2005, and was interviewed the same day.  (*Id.*).  As part of the written test, Plaintiff again completed a Biographical Data Sheet.  (Def. 56.1 ¶ 23; Switzer Decl., Ex. I). Plaintiff

---

[2]    The letter is dated August 8, 2003, and the envelope is postmarked August 12, 2003. (Switzer Decl., Ex. G).

disclosed his two arrests and noted that the charges in both cases had been dismissed.  (Def. 56.1 ¶¶ 24-25).

As in 2003, the NYPD found Plaintiff psychologically unsuited to be a police officer.  (Def. 56.1 ¶¶ 28-29).  On November 30, 2005, the NYPD sent Plaintiff a letter by certified mail, with return receipt requested, informing Plaintiff that he had not met the requirements for the position of police officer and had been disqualified based upon his psychological tests and interview. (*Id.* at ¶ 30; Switzer Decl., Ex. K).[3]  The letter also included instructions on how to appeal this determination.  (Def. 56.1 ¶ 33).  Once again, although the disqualification letter was sent to the address Plaintiff had listed on his NYPD application form — an address different than that listed on his 2003 application — it was returned to the NYPD as "unclaimed" mail.  (Def. 56.1 ¶¶ 31, 34; Switzer Decl., Ex. I, K).

### 3.     Plaintiff's 2006 Application

Plaintiff applied to the NYPD for the third time in 2006.  (Def. 56.1 ¶ 36). Plaintiff took the psychological written test on January 20, 2006, and was interviewed by a psychologist on January 23, 2006.  (*Id.* at ¶ 38).  Plaintiff again completed the Biographical Data Sheet that he had filled out in connection with his two previous applications.  (Switzer Decl., Ex. M)  In a marked departure from his two previous applications, however, Plaintiff indicated on the form that he had no arrest history and provided none of the details

---

[3]     The letter is dated November 21, 2005, and the envelope is postmarked November 30, 2005.  (Switzer Decl., Ex. K).

regarding the two arrests that he had included on his previous submissions. (Def. 56.1 ¶¶ 39-40; Switzer Decl., Ex. M). Additionally, Plaintiff indicated on the form that he had not previously applied for employment with the NYPD. (*See* Def. 56.1 ¶ 41).

Plaintiff's interview with the NYPD psychologist was, according to Plaintiff, more akin to an interrogation than an interview. (*See* Petty Dep. 170-71). The psychologist informed Plaintiff during the interview that he was aware that Plaintiff had been arrested, and then told Plaintiff to leave. (*Id.* at 170 ("[T]he third one was a psychologist that didn't even finish the interview. He told me that I was arrested and he knew it and to get out.")). Plaintiff further testified that the psychologist was biased against Plaintiff because he had been arrested. (*Id.* at 171; *see also id.* at 190 ("The fact of the matter was that [the NYPD] utilized the arrests to not hire me.")).

Following this meeting, the interviewing psychologist determined that Plaintiff was psychologically unsuited for police officer work. (Def. 56.1 ¶¶ 44-45). This decision was sustained by a supervising psychologist. (*Id.*). On April 27, 2006, the NYPD sent Plaintiff a letter by certified mail, with return receipt requested, informing Plaintiff that he had not met the requirements for the position of police officer and was disqualified based upon his psychological tests and interview. (*Id.* at ¶ 46; Switzer Decl., Ex. O).[4] The letter also included instructions on how to appeal this determination. (Def. 56.1 ¶ 49). Again,

---

[4]     The letter is dated April 25, 2006, and the envelope is postmarked April 27, 2006. (Switzer Decl., Ex. O).

although the disqualification letter was sent to the address Plaintiff had listed

on his NYPD application form — the same address Plaintiff listed on his 2005

application — it could not be delivered by the Postal Service to that address

and was returned to the NYPD as "unclaimed" mail.  (Def. 56.1 ¶¶ 47, 50;

Switzer Decl., Ex. M, O).

On August 20, 2009, more than three years later, Plaintiff filed an

administrative complaint with the New York State Division of Human Rights

(the "SDHR") against the NYPD, alleging discrimination on the basis of his

arrest record.  (Def. 56.1 ¶ 100; Switzer Decl., Ex. EE (the "NYPD Complaint")).

Significantly, for purposes of the present motion, the NYPD Complaint

contained no allegations that the NYPD had discriminated against Plaintiff

based on his "color," "disability/perceived disability/past disability," or "race."

(Def. 56.1 ¶ 100; Switzer Decl., Ex. EE; Petty Dep. 168, 171-72).

## B.    The DOC Application

### 1.    Plaintiff's Medical Disqualification

Shortly after submitting his third NYPD application, Plaintiff began the

process of applying to the DOC in the hope of becoming a correction officer

with the City.  (*See* Def. 56.1 ¶ 58).[5]  On March 29, 2006, Plaintiff attended an

orientation session for correction officer candidates and filled out a DOC

Screening Sheet — a questionnaire similar to the Biographical Data Sheet

Plaintiff had completed in connection with his NYPD applications.  (*See id.* at

---

[5]    It bears noting that, at this time of his application to the DOC, Plaintiff was employed
as a correction officer with the Federal Bureau of Prisons.  (Switzer Decl., Ex. P)

¶¶ 58-59; Switzer Decl., Ex. P).  In response to a question about prior arrests,
Plaintiff indicated — consistent with his approach on the January 2006 NYPD
application — that he had never been arrested.  (*See id.* at ¶¶ 59-60; Switzer
Decl., Ex. P).

On April 6, 2006, Plaintiff appeared for a medical exam in connection
with his DOC application.  (Def. 56.1 ¶¶ 61-62).  Shortly thereafter, on April 19,
2006, Plaintiff was placed on medical review for "cardiac" reasons and
scheduled to return on May 11, 2006, for further tests.  (*Id.* at ¶ 64; Switzer
Decl., Ex. S).  The upshot of this determination was that Plaintiff's application
was held in abeyance pending his appearance for further medical evaluation.
(*See* Switzer Decl., Ex. S).[6]  On June 25, 2007 (over a year later), the DOC sent
Plaintiff a letter by regular mail regarding his application status.  (Def. 56.1
¶ 67; Switzer Decl., Ex. T, U).[7]  The letter informed Plaintiff that he had been
placed on medical review in April 2006, and had been scheduled to return for
further evaluation in May 2006.  (Def. 56.1 ¶ 66).  The letter instructed Plaintiff
to obtain clearance from a cardiologist within 14 days of receipt of the letter.
(*Id.*).  The DOC attempted to mail this letter to Plaintiff at the address listed on
his DOC application — the same address listed on Plaintiff's 2005 and 2006

---

[6]     It is unclear how — if at all — the DOC attempted to convey this information to Plaintiff.
The City has submitted a copy of the medical review notice, dated April 19, 2006, but
has not supplied a postmarked envelope indicating that the DOC mailed Plaintiff a copy
of this notice or otherwise put forth evidence that this notice was mailed.  Accordingly,
construing all evidence in the light most favorable to the nonmoving party, the Court
concludes for the purposes of this motion that the DOC never sent Plaintiff a copy of
this notice.

[7]     The letter is dated June 18, 2007, and the envelope is postmarked June 25, 2007.
(Switzer Decl., Ex. T, U).

NYPD applications — but it was returned to the DOC as undeliverable.  (Def. 56.1 ¶¶ 63, 68).

On December 19, 2007, the DOC sent the Department of Citywide Administrative Services ("DCAS") a letter by regular mail indicating that Plaintiff had failed to pursue his application to the DOC because he had not submitted the requisite medical information.  (Def. 56.1 ¶ 69; Switzer Decl., Ex. U, V).[8]  A copy of the letter was mailed to Plaintiff at the address listed on his DOC application, and was returned to the DOC as undeliverable.  (*See* Def. 56.1 ¶ 70; Switzer Decl., Ex. U).  Subsequently, Plaintiff was removed from the civil service eligible list for failure to comply with the DOC's request for medical documentation, effectively terminating his application to the DOC.  (*See* Def. 56.1 ¶¶ 69, 71).

### 2.   Plaintiff's 2009 Renewed Application to the DOC

Because the DOC's letters were returned to sender, Plaintiff never received information regarding his placement on medical review or his removal from the list of eligible applicants.  (*See* Def. 56.1 ¶¶ 68, 70).  On July 14, 2009 (more than three years after his last interaction with the DOC), Plaintiff contacted the DOC by telephone regarding his application status and to update the DOC on a change of address.  (*Id.* at ¶¶ 71-72).  During this conversation, Plaintiff found out for the first time that he had been placed on medical review and that his name had been removed from the eligible list.  (*Id.*).  After this

---

[8]   The letter is dated December 19, 2007, and the envelope is postmarked December 19, 2007.  (Switzer Decl., Ex. U, V).

telephone call, Plaintiff attempted to rectify the deficiencies in his application

by sending medical documentation, including an electrocardiogram ("EKG"),

demonstrating that he was "an able-bodied individual with no medical

problems." (Petty Dep. 139). On August 4, 2009, approximately one week after

receiving Plaintiff's medical documentation, the DOC restored Plaintiff's

application. Thereafter, on September 16, 2009, Plaintiff attended and passed

a DOC medical exam, which established that he was physically able to perform

the duties of a correction officer. (*See* Def. 56.1 ¶ 76; Switzer Decl., Ex. Q).

In October 2009, Plaintiff visited the DOC and met with Investigator

Pam Ians for fingerprinting in connection with the DOC's background

investigation. (Def. 56.1 ¶ 77).[9] By happenstance, Ians had previously worked

with the NYPD, and recognized Plaintiff from years earlier when Plaintiff had

applied to become a police officer. (*See id.* at ¶ 78). During a brief

conversation with Ians, Plaintiff noted that the NYPD had not hired him, and

that he had filed an administrative complaint. (*Id.* at ¶¶ 78-79).[10] Plaintiff did

not mention the nature of his grievance or the allegations contained in his

administrative complaint. (*Id.*). The next day, Plaintiff received a telephone call

from Ians's supervisor, Deputy Director Marvell. (*Id.* at ¶ 82).[11] According to

---

[9]     The spelling of names is inconsistent throughout the record. (*Compare* Complaint ("Compl." (Dkt. #2)) 1, 6 ("Ians"), *with* Switzer Decl., Ex. FF ("Eans"), *and* Def. 56.1 ¶¶ 77-82 ("Eanes")). Accordingly, except in the cases where the record contains documentation confirming the spelling of an individual's name, the Court will adopt the spelling conventions used by Plaintiff in his Complaint.

[10]    As discussed in Background Sec. C(1), *infra*, Plaintiff filed an administrative complaint against the NYPD on August 20, 2009. (Switzer Decl., Ex. EE).

[11]    The record does not indicate Marvell's first name.

Plaintiff's testimony, Marvell inquired about whether Plaintiff had filed a lawsuit against the NYPD.  (*See* Petty Dep. 195-96).  During this conversation, Marvell reportedly told Plaintiff that he could remove Plaintiff's name from "the hiring list" depending on Plaintiff's answer.  (*Id.* at 194).  Plaintiff confirmed that he had filed a complaint, but did not provide any information about his allegations against the NYPD or the nature of the complaint.  (Def. 56.1 ¶ 86).

Shortly after his conversation with Marvell, on October 21, 2009, Plaintiff filed a second administrative complaint with the SDHR, this time against the DOC, alleging that he had been retaliated against because of his prior SDHR complaint against the NYPD.  (*See* Def. 56.1 ¶ 87; Switzer Decl., Ex. FF (the "DOC Complaint")).  Plaintiff alleged in the DOC Complaint that he had been the victim of discrimination and retaliation based on his "arrest record"; he did not allege that he had experienced discrimination based on his "color," "disability/perceived disability/past disability," or "race," or that he had expressed opposition to any such discriminatory treatment  (Def. 56.1 ¶ 102; Switzer Decl., Ex. FF).

Despite Plaintiff's admission to Marvell that he had filed a complaint against the NYPD, and despite his subsequent filing of an administrative complaint against the DOC, Plaintiff's name remained on the DOC hiring list and his application proceeded to subsequent stages.  (*See* Def. 56.1 ¶¶ 88-98).  During this period of the application process, however, Plaintiff encountered perceived interpersonal difficulties with certain DOC employees.  Specifically, according to Plaintiff, the investigator assigned to review his application

materials — Investigator Feliz — refused to take Plaintiff's paperwork, and accused Plaintiff of raising his voice.  (*Id.* at ¶ 90).[12]

Thereafter, Marvell assigned Plaintiff's background check to a new investigator, Investigator Sullivan.  (Def. 56.1 ¶ 92).[13]  Sullivan informed Plaintiff by telephone that he was required to appear for an agility test on February 17, 2010 — a date on which Plaintiff confirmed he was available.  (*See* Def. 56.1 ¶ 95; Switzer Decl., Ex. JJ at 2).[14]  Sullivan noted the time and the location of the agility test, and added that a notice would be mailed to Plaintiff with the same information.  (Def. 56.1 ¶ 95; Switzer Decl., Ex. JJ at 2).  Sullivan asked Plaintiff to call her by February 12, 2010 (five days prior to the date of the test), if he had not received the confirmation notice by mail.  (Def. 56.1 ¶ 95; Switzer Decl., Ex. JJ at 2).

Plaintiff received the notice confirming the date, time, and location of the agility test, but testified that he did not receive it until months after the agility test took place.  (Def. 56.1 ¶ 96).[15]  Instead, Plaintiff testified that he received a

---

[12]   The record does not indicate Feliz's first name.

[13]   The record does not indicate Sullivan's first name.

[14]   Unlike his interactions with other DOC employees, Plaintiff's dealings with Sullivan appear to have been civil and uncontentious.  (*See generally* Switzer Decl., Ex. JJ at 2 ("Sullivan: I'm a blessing to you, I know.  Petty: You are.  You actually — you know what all jokes a[]side, I really want to commend you and I [want to] say thank you.")).

[15]   During his deposition, Plaintiff repeatedly stated that he did not know where or when the agility test would take place because he did not receive a written notice prior to February 17, 2010.  (Petty Dep. 201 ("The only way I could have made it to the — to take an agility test is either with a letter or a telephone call being told exactly where to report to.  I never received a letter until after the fact, nor did I receive a telephone call."); *id.* at 202 ("I didn't know where it was, what time, what date.")).  The Court notes that Plaintiff's testimony is difficult to reconcile with, if not wholly undermined by, the telephone conversation Plaintiff recorded and produced during discovery, in which

different piece of correspondence prior to the agility test: a letter from Sullivan,

dated February 11, 2010, stating that Plaintiff was required to provide a copy

of an official high school diploma in support of his application.  (Petty

Dep. 200-02; Switzer Decl., Ex. DD).  Plaintiff apparently interpreted this

letter — which did not make reference to the agility test — as precluding him

from participating in the agility test.  (Def. 56.1 ¶ 98).  With that

understanding, and having not received a written confirmation regarding the

agility test from Sullivan, Plaintiff did not report to the DOC on February 17,

2010, to complete the test.  (*See* Petty Dep. 201-02).  There is nothing in the

record to indicate that Plaintiff attempted to contact Sullivan for clarification,

or to reschedule his agility test.  His application expired on June 7, 2010.  (Def.

56.1 ¶ 99).

**C.      Plaintiff's Administrative Complaints**

As noted *supra*, Plaintiff filed two administrative complaints with the

SDHR.  (*See* Switzer Decl., Ex. EE, FF).  Plaintiff's NYPD Complaint alleged

discriminatory acts in violation of the NYSHRL.  (Switzer Decl., Ex. EE).

Specifically, Plaintiff alleged that the NYPD discriminated against Plaintiff

because of his arrest record.  (*See id.*).  Plaintiff's DOC Complaint alleged

discriminatory acts in violation of the NYSHRL and retaliation in violation of

Title VII.  (Switzer Decl., Ex. FF).  Specifically, Plaintiff alleged that the DOC,

---

Sullivan told Plaintiff where and when the agility test would take place.  (*See* Switzer
Decl., Ex. JJ at 1-2).

knowing that Plaintiff had filed a complaint against the NYPD, retaliated by obstructing Plaintiff's application to the DOC.  (*See id.*).

On April 23, 2010, the SDHR dismissed both of Plaintiff's complaints for lack of jurisdiction.  (*See* Switzer Decl., Ex. GG, HH).  Significantly, the SDHR noted that a failure to hire an applicant for the position of police officer or correction officer on the basis of the applicant's "arrest record" does not constitute unlawful discrimination under the NYSHRL.  (*See* Switzer Decl., Ex. GG, HH).  In dismissing Plaintiff's DOC Complaint, the SDHR added that Plaintiff's retaliation claim under the NYSHRL failed because the complaint against the NYPD — alleging discrimination based on Plaintiff's arrest record — did not constitute protected activity under Title VII.  (*See* Switzer Decl., Ex. HH at 1).  The SDHR informed Plaintiff that he could appeal each of these determinations to the New York State Supreme Court within 60 days.  (*See id.* at Ex. GG, HH).  There is nothing in the record to suggest Plaintiff appealed either determination.

Because Plaintiff invoked Title VII in his DOC Complaint, the SDHR also notified Plaintiff that he had a right to request a review by the Equal Employment Opportunity Commission (the "EEOC").  (*See* Switzer Decl., Ex. HH at 2).  The SDHR further informed Plaintiff that if he did not request an EEOC review, the "EEOC will generally adopt our action in your case."  (*Id.*).  There is nothing in the record to suggest that Plaintiff requested an EEOC review.  On September 2, 2010, the EEOC adopted the findings of the SDHR and issued Plaintiff a right to sue letter.  (*See id.* at Ex. A.)

14

**D.    The Instant Litigation**

On November 4, 2010, Plaintiff filed the Complaint.  (Dkt. #2).  Plaintiff's allegations in the Complaint can be summarized as follows: While he was applying to become a police officer with the NYPD, Plaintiff alleges that he was subject to discrimination based on his race, color, and disability.  (Compl. 5-6). Specifically, he alleges that "the psych[ology] dep[artmen]t acted ethically and morally in [a] judgmental way that created a bias and discriminated against me as it has done to many minorities (blacks and hispanics) as a protected group and this proves racial discrimination[.]"  (*Id.* at 6).  More curiously, Plaintiff alleges that "the postal machines used by the NYPD and []DOC can and have been manipulated and ... the director [of] psych[ological] services has intentionally manipulated the mail on behalf of the NYPD to fail many qualified minority applicants."  (*Id.*).  And with particular respect to the discrimination claim based on his disability, Plaintiff alleges that the NYPD was aware of his medical discharge from the military and discriminated against him for this reason.  (*Id.* at 5).

Plaintiff further alleges that during the application process with the DOC, he was subject to retaliation based on his opposition to the discrimination he had faced during the NYPD application process.  (Compl. 6-7).  More specifically, Plaintiff alleges that City employees involved in his DOC application process were aware that he had filed an administrative complaint regarding the discrimination he had faced when he applied to the NYPD, and retaliated by obstructing his ability to move forward in the DOC hiring process.

15

(*Id.* at 7).  Plaintiff also alleges that he was denied due process under the Fourteenth Amendment because the City did not send him disqualification letters informing him of the status of his unsuccessful applications or of his right to appeal the determinations underlying the disqualification decisions.[16]

This action was initially assigned to the Honorable George B. Daniels, United States District Judge for the Southern District of New York.  Judge Daniels referred the case to the Honorable Debra C. Freeman, Magistrate Judge for the Southern District of New York, on April 11, 2013, to supervise general pretrial proceedings.  (Dkt. #16).  It was reassigned from Judge Daniels to the undersigned on June 20, 2013.  (Dkt. #20).  On December 23, 2013, after the close of discovery, the City filed a pre-motion letter seeking leave to move for summary judgment.  (Dkt. #29).  The Court held a pre-motion conference on January 16, 2014, and issued a Scheduling Order for summary judgment briefing on the same day.  (Dkt. #35).  The City's motion for summary judgment was filed on March 4, 2014.  (Dkt. #36).  On March 13, 2014, Plaintiff submitted his opposition papers.  (Dkt. #45).  The motion was fully submitted as of the filing of Defendants' reply on March 24, 2014.  (Dkt. #47).[17] The Court will now consider Defendants' motion.

---

[16]    As the Defendants point out, Plaintiff alluded to a violation of due process under the Fourteenth Amendment during his deposition.  (Def. Br. 21 (citing Petty Dep. 190)).  He also raised this claim in his Opposition.  (Pl. Opp. 2).  Although the Complaint does not specifically allege this cause of action, the Court addresses this claim because "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest."  *Cruz* v. *Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (internal quotation marks and citation omitted).

[17]    In addition to his opposition, Plaintiff has made numerous unauthorized filings in response to Defendants' motion.  (*See* Dkt. #46, 48, 50, 52, 53, 55, 57, 58, 60, 62, 63, 64, 65).  After Plaintiff's unauthorized supplementary filings of March 18, 2014 (Dkt.

## DISCUSSION

**A.    Applicable Law**

### 1.    Summary Judgment Generally

Under Fed. R. Civ. P. 56(a), summary judgment may be granted only if all the submissions taken together "show[] that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  *See Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322 (1986); *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323.  A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248; *see also Jeffreys* v. *City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*). The movant may discharge this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex,* 477 U.S. at 322; *see also Selevan* v. *N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (finding summary judgment

---

#46), March 19, 2014 (Dkt. #48), and March 27, 2014 (Dkt. #50), the Court informed Plaintiff that it would consider these three unauthorized filings in reviewing Defendants' motion for summary judgment.  (Dkt. #54).  The Court also informed Plaintiff that the motion would be considered fully briefed as of March 27, 2014.  (*Id.*).  Despite the Court's Order, Plaintiff continued to file unauthorized and untimely materials in response to Defendants' motion.  By Order dated May 29, 2014, the Court reminded Plaintiff that submissions filed after March 27, 2014, would not be considered.  (Dkt. #61).

appropriate where the non-moving party fails to "come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on an essential element of a claim" (internal quotation marks omitted)).

If the moving party meets this burden, the nonmoving party must "set out specific facts showing a genuine issue for trial" using affidavits or otherwise, and cannot rely on the "mere allegations or denials" contained in the pleadings.  *Anderson*, 477 U.S. at 248, 250; *see also Celotex*, 477 U.S. at 323-24; *Wright* v. *Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (internal quotation marks omitted), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (quoting *Quarles* v. *General Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)).  Furthermore, "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist."  *Hicks* v. *Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher* v. *Atex, Inc.,* 68 F.3d 1451, 1456 (2d Cir. 1995) (internal quotation marks and citations omitted)).

### 2.  **Summary Judgment in *Pro Se* Cases**

When considering a motion for summary judgment, the Court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor."  *Dickerson* v.

*Napolitano*, 604 F.3d 732, 740 (2d Cir. 2010) (citing *LaSalle Bank Nat'l Ass'n* v. *Nomura Asset Capital Corp.*, 424 F.3d 195, 205 (2d Cir. 2005)).  In a *pro se* case, the Court must go one step further and liberally construe the party's pleadings "to raise the strongest arguments that they suggest."  *McPherson* v. *Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos* v. *Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

Nonetheless, a *pro se* litigant must still be held to the normal requirements of summary judgment, and "bald assertion[s]," unsupported by evidence, will not overcome a motion for summary judgment.  *See Carey* v. *Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991); *Stinson* v. *Sheriff's Department*, 499 F. Supp. 259, 262 (S.D.N.Y. 1980) (holding that the liberal standard accorded to *pro se* pleadings "is not without limits, and all normal rules of pleading are not absolutely suspended").

## B.    Analysis

### 1.    Plaintiff's Claims Against the Individual Defendants and the Municipal Entities Are Dismissed

In addition to naming the City as a Defendant, Plaintiff also named a number of individual employees and municipal agencies of the City. Specifically, Plaintiff named Dr. Archibald, Dr. David A. Safran, Deputy Director Investigator Marvell, Investigator Pam Ians, and Investigator Feliz — individuals who were involved at various stages of Plaintiff's applications to the NYPD and DOC (the "Individual Defendants").[18]  Plaintiff also named the City

---

[18]    The record does not indicate the first name of Defendant Archibald.

agencies — the NYPD, the DOC, and DCAS (the "Municipal Agency Defendants") — involved in the NYPD and DOC hiring processes.

     None of the Individual Defendants has been served with the Summons and Complaint, and the time within which to serve these Defendants has long since passed.  *See* Fed. R. Civ. P. 4(m).  Accordingly, the Court dismisses the claims asserted against the Individual Defendants without prejudice, pursuant to Fed. R. Civ. P. 4(m).

     With respect to the Municipal Agency Defendants, these claims cannot proceed because a New York City agency is not an entity that can be sued.  *See* N.Y. City Charter ch. 17, § 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law."); *e.g.*, *Jenkins* v. *City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007) ("[T]he NYPD is a non-suable agency of the City.").  All claims against the Municipal Agency Defendants are accordingly dismissed.

### 2.    Plaintiff's Claims of Discrimination Based on Race, Color, and Disability Fail

#### a.    Plaintiff's Title VII and ADA Claims of Discrimination Are Procedurally Barred for Failure to Exhaust Administrative Remedies

Defendants' summary judgment motion challenges Plaintiff's discrimination claims on several procedural grounds.  First, Defendants argue that Plaintiff's claims under Title VII and the ADA for discrimination based on race, color, and disability must be dismissed as a matter of law because

Plaintiff failed to exhaust his administrative remedies by not filing these claims with the EEOC.  (Def. Br. 3-6).  The Court agrees.

Before filing a Title VII or ADA claim in federal court, a plaintiff must exhaust all available administrative remedies and file a charge of discrimination with the EEOC or the equivalent state agency within 300 days of the alleged discriminatory conduct.  *Hoffman* v. *Williamsville Sch. Dist.*, 443 F. App'x 647, 649 (2d Cir. 2011) (summary order) ("As with Title VII, plaintiffs asserting ADA claims must exhaust all available administrative remedies, and must file an EEOC charge within 300 days of the alleged discriminatory conduct if they have instituted proceedings with a state or local agency." (internal citations omitted)).

 "A district court may only hear claims that are either included in the EEOC charge or are based on conduct which is reasonably related to conduct alleged in the EEOC charge."  *Fiscina* v. *New York City Dist. Council of Carpenters*, 401 F. Supp. 2d 345, 356 (S.D.N.Y. 2005).  The Second Circuit instructs that "'a claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made.'"  *Williams* v. *New York City Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (quoting *Fitzgerald* v. *Henderson*, 251 F.3d 345, 359-60 (2d Cir. 2001).  "This exception to the exhaustion requirement is essentially an allowance of loose pleading and is based on the recognition that EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to

21

alert the EEOC to the discrimination that a plaintiff claims he is suffering."
*Deravin* v. *Kerik*, 335 F.3d 195, 201 (2d Cir. 2003) (internal quotation marks
omitted).  To determine whether a claim is "reasonably related" to a claim
included in an EEOC charge, courts should focus "on the factual allegations
made in the EEOC charge itself, describing the discriminatory conduct about
which a plaintiff is grieving," and ask the "central question" of "whether the
complaint filed with the EEOC gave the agency adequate notice to investigate
discrimination on both bases."  *Williams*, 458 F.3d at 70.

As an initial matter, Plaintiff's NYPD Complaint is devoid of any facts
relating to discrimination based on race, color, or disability — the claims that
Plaintiff brings before this Court.  The stock SDHR complaint form that Plaintiff
filled out required him to select the basis (or bases) of discrimination from a list
of 16 options.  (*See* Switzer Decl., Ex. EE at 3).  This list included
discrimination based on "race," "color," and "disability."  (*Id.*).  Instead of
selecting any of these options, Plaintiff selected discrimination based on "arrest
record."  (*See id.*).  Significantly, the factual allegations supporting Plaintiff's
claim, and describing the allegedly discriminatory conduct, focus wholly on the
reaction of the NYPD's psychologists to Plaintiff's arrest record.  (*See* Switzer
Decl., Ex. EE at 5 ("[O]nly in the one on one interviews am I badgered on [three]
dismissed arrests that occurred[.]  [O]n my last exam[,] … I did not list any
arrests nor psychological problems or disorders[.]  [S]ubsequently[,] the
psychologist comes in discusses my arrest and that I took [two] other police
exams and terminates the interview.")).  Furthermore, during his deposition,

22

Plaintiff confirmed that he had no intent to allege discrimination based on race, color, or disability at the time he filed the NYPD Complaint.  (*See* Petty Dep. 172 ("Q: [Y]ou're saying at some point later on, not at the time you filed this complaint in August of 2009, but at some point later you've come to believe that the things that happened to you with respect to your applications for positions with the police department were as a result of the discrimination because of your disability or your color or your race; is that fair to say?  A: That is correct.")).  Accordingly, Plaintiff's NYPD Complaint was incapable of putting the SDHR or EEOC on notice of the discrimination based on race, color, or disability that Plaintiff now alleges.

Nor would the retaliation allegations in Plaintiff's DOC Complaint, which was filed several months later, have put the SDHR or EEOC on notice that the discriminatory acts underlying the NYPD Complaint related to Plaintiff's race, color, or disability.  The DOC Complaint is similarly devoid of any references to race, color, or disability.  Plaintiff alleges in the DOC Complaint that the NYPD's "[d]iscrimination has [bled] into the []DOC hiring process."  (Switzer Decl., Ex. FF at 3).  Specifically, he alleges that DOC personnel questioned Plaintiff about his NYPD Complaint and threatened to remove his name from the hiring list if he did not answer their questions.  (*Id.* at 4).  Even here, however, Plaintiff indicated on the standard SDHR complaint form that the DOC had discriminated against him based only on his "arrest record."  (*See id.* at 3 ("[Three] arrests *all dismissed*/[two] of them [domestic violence]."

(emphasis in original))).[19]  Consequently, there was nothing in either SDHR complaint that would have given the administrative agencies adequate notice to investigate Plaintiff's current allegations of discrimination concerning his race, color, or disability.  Because Plaintiff did not exhaust his Title VII and ADA claims based on race, color, and disability, and because these claims cannot be said to be reasonably related to the conduct actually alleged in Plaintiff's SDHR complaints, Defendants' summary judgment motion as to these claims is granted.  *See DiProjetto* v. *Morris Protective Serv.*, 306 F. App'x 687, 688 (2d Cir. 2009) (summary order) (holding that plaintiff's claims under Title VII and the ADA were properly dismissed because plaintiff failed to include those claims in his EEOC charge); *Carter* v. *New York City Dep't of Corr.*, 7 F. App'x 99, 102 (2d Cir. 2001) (summary order) (holding that plaintiff "failed to exhaust available administrative remedies in regard to racial discrimination claims since he did not raise them in his SDHR charge and they were not reasonably related to the retaliation claims that were alleged before the SDHR"); *McNamee* v. *Starbucks Coffee Co.*, 914 F. Supp. 2d 408, 417 (W.D.N.Y. 2012) (granting summary judgment and concluding that the ADA claim was not "reasonably related" to the claims that were included in the EEOC complaint; the "EEOC's actual

---

[19]   Plaintiff also indicated on his DOC Complaint form that he had been discriminated against on the basis of "Domestic Violence Victim Status."  (Switzer Decl., Ex. FF at 3). However, it does not appear elsewhere in the record that Plaintiff has alleged this separate discriminatory basis.  Rather, it appears that Plaintiff intended to clarify that he had been discriminated against based on his "arrest record," which included arrests for domestic violence.  (*See id.* ("[Two] domestic violence arrests (dismissed).").

investigation into Plaintiff's complaint only addressed discrimination on the basis of age and gender, not disability").

### b.   Plaintiff's Title VII and ADA Claims Are Time-Barred

Next, even assuming Plaintiff had exhausted his remedies, Defendants argue that Plaintiff's Title VII and ADA claims alleging discriminatory conduct in connection with his NYPD application are barred by the statute of limitations.  (Def. Br. 7).  Specifically, Defendants argue that the alleged discriminatory conduct occurred between 2003 and 2006, when — in connection with three separate applications — Plaintiff participated in pre-employment exams and interviews, and the NYPD issued Plaintiff three separate psychological disqualification letters.  (*Id.* at 8-9).  The Court finds that these claims are time-barred.

 "A Title VII employment discrimination claim must be filed with the Equal Employment Opportunity Commission ('EEOC') or New York State Division of Human Rights ('SDHR') within 300 days of the alleged unlawful practice.  *Cetina* v. *Longworth*, No. 14-268-cv, — F. App'x —, 2014 WL 4338071, at *1 (2d Cir. Sept. 3, 2014); *see also Baroor* v. *New York City Dep't of Educ.*, 362 F. App'x 157, 159 (2d Cir. 2010) (summary order) ("For a Title VII claim arising in New York to be timely, a plaintiff must file the charge with the Equal Employment Opportunity Commission ('EEOC') within 300 days of the allegedly unlawful employment practice."); 42 U.S.C. § 2000e-5(e).

An exception to the 300-day statute of limitations exists where plaintiff establishes a "continuing violation."  *Nat'l R.R. Passenger Corp.* v. *Morgan*, 536

U.S. 101, 113 (2002).  Under this exception, "if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." *Hongyan Lu* v. *Chase Inv. Serv. Corp.*, 412 F. App'x 413, 416 (2d Cir. 2011) (summary order). The Second Circuit, however, has "cautioned … that while this theory may apply to 'cases involving specific discriminatory policies or mechanisms,… multiple incidents of discrimination, even *similar ones*, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation.'" *Id.* (citing *Lambert* v. *Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993) (emphasis in original)).

Plaintiff filed his NYPD Complaint on August 20, 2009.  (Switzer Decl., Ex. EE).  Consequently, claims accruing prior to October 24, 2008 (i.e., 300 days before Plaintiff's NYPD Complaint was filed), are untimely.  The record demonstrates that Plaintiff's Title VII and ADA discrimination claims — even assuming they were not already barred for failure to exhaust administrative remedies — were not timely asserted.  None of the allegedly discriminatory acts of which Plaintiff complained occurred later than April 2006, when the NYPD sent Plaintiff his third, and final, disqualification letter.

Additionally, considering the issue *sua sponte* in order to advance Plaintiff's strongest arguments, the Court does not find any reason for equitable tolling of the statute of limitations so as to render Plaintiff's claim timely.  *Baroor*, 362 F. App'x at 159 ("Equitable tolling is … 'only appropriate in

rare and exceptional circumstances, in which a party is prevented in some extraordinary way from exercising his rights.'" (quoting *Zerilli-Edelglass* v. *New York City Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003))).  Plaintiff argues that the City never sent him any of the three disqualification letters — which argument, if substantiated, could constitute grounds for equitable tolling under these circumstances.  However, this argument fails because it is thoroughly contradicted by documentary evidence in the record.  The City has provided detailed documentation — including signed, dated disqualification letters; postmarked envelopes bearing the disqualification letters; and certified mail tracking receipts — that indicates the NYPD made every effort to send Plaintiff his disqualification letters.  Each of the envelopes bears the address Plaintiff identified as his mailing address on his applications, and all of these envelopes were returned to the City as unclaimed.  Plaintiff's response to this material is to argue that "[t]he City engaged in a deceptive continuing practice of mail fraud."  (Pl. Opp. 4).  More specifically, Plaintiff argues that the City backdated the disqualification letters, intentionally manipulated the postal meters to change the date of the postmark, and fabricated the certified mail receipts.  (*Id.* at 4-5).  Plaintiff has failed to support these serious allegations of misconduct with any facts that would make his argument in the least bit plausible.  These "bald assertion[s], completely unsupported by evidence," cannot be relied upon to defeat Defendants' motion for summary judgment.  *Crescenzi*, 923 F.2d at 21; *cf. Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007) (requiring allegations to "nudge[ ] ... claims across the line from conceivable to plausible"

in order to survive motion to dismiss).  Accordingly, equitable tolling is not appropriate and Plaintiff's Title VII and ADA claims alleging discriminatory conduct are dismissed as time-barred.

> ### c.   Plaintiff's Claims Under the NYSHRL and the NYCHRL for Discriminatory Conduct Are Time-Barred

As a third claim of procedural bar, Defendants argue that Plaintiff's claims under the NYSHRL and the NYCHRL for conduct occurring before November 4, 2007, are time-barred.  (Def. Br. 8-9).  Again, Defendants are correct.

The statute of limitations for claims under the NYSHRL and the NYCHRL is three years from the date that the claim accrues.  *Lugo* v. *City of New York*, 518 F. App'x 28, 29 (2d Cir. 2013) (summary order); *see also E.E.O.C.* v. *Bloomberg L.P.*, 967 F. Supp. 2d 816, 831 (S.D.N.Y. 2013); N.Y. C.P.L.R. § 214(2); N.Y.C. Admin. Code § 8-502(d).  As mentioned *supra*, none of the allegedly discriminatory acts of which Plaintiff complained occurred after the NYPD sent Plaintiff his third disqualification letter in April 2006.  For this reason, Plaintiff's claims under the NYSHRL and the NYCHRL that the Defendants discriminated against him are dismissed.[20]

---

[20]   The Court need not consider whether the statute of limitations should be tolled while Plaintiff's administrative complaints were pending before the SDHR or before the EEOC because such tolling would not save Plaintiff's claims.  Plaintiff filed his first administrative complaint on August 20, 2009 — more than three years after the NYPD sent Plaintiff his third, and final, disqualification letter.

### 3.   Plaintiff Cannot Establish a Prima Facie Case of Retaliation

### a.   Plaintiff's Title VII and NYSHRL Claims

Plaintiff's next collection of claims concerns alleged retaliatory conduct. To establish a prima facie case of retaliation under Title VII, "a plaintiff must demonstrate that "[i] [he] engaged in protected activity; [ii] the employer was aware of that activity; [iii] the employee suffered a materially adverse action; and [iv] there was a causal connection between the protected activity and that adverse action." *Kelly* v. *Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013). "The standard[] for evaluating …[a] retaliation claim[] is identical under Title VII and the NYSHRL." *Id.* "[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co.* v. *White,* 548 U.S. 53, 68 (2006) (internal quotation marks omitted).

In the instant case, Defendants argue that Plaintiff is unable to satisfy the first element of a prima facie case of retaliation.  The filing of a complaint with the SDHR will constitute protected activity as long as it "protest[s] or oppose[s] *statutorily prohibited* discrimination." *Benn* v. *City of New York*, 482 F. App'x 637, 638 (2d Cir. 2012) (summary order) (emphasis added). Defendants are correct to point out that no statute prohibits the discriminatory behavior alleged in Plaintiff's NYPD Complaint.  (Def. Br. 12).  *See Parks* v. *New York City Dep't of Corr.*, 253 F. App'x 141, 143 (2d Cir. 2007) (summary order)

("Title VII does not cover alleged discrimination on the basis of an employee's arrest record[.]").  Notably, the NYSHRL and NYCHRL — which generally do prohibit discrimination based on an applicant's arrest record — expressly *allow* employing entities to take into account an applicant's arrest record when hiring police officers and correction officers.  *See* N.Y. Exec. Law § 296(16); N.Y.C. Admin. Code § 8-107(11); *see also Sheriff's Dep't* v. *State Div. of Human Rights*, 514 N.Y.S.2d 779, 780 (2d Dep't 1987) (noting that the NYSHRL "was amended in 1985 to permit pre-employment inquiry into the arrest records of law enforcement applicants").  Therefore, Plaintiff's "complaints about [the] selection process ... were directed at something that, as it was alleged, is not properly within the definition of an 'unlawful employment practice.'" *Manoharan* v. *Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 594 (2d Cir. 1988).  Accordingly, Plaintiff cannot establish that his NYPD Complaint constituted protected activity.[21]

Additionally, Defendants argue that Plaintiff cannot establish that an adverse employment action occurred *as a result* of Plaintiff's protected activity.  (Def. Br. 17-20).  To be sure, Plaintiff was not hired by the DOC.  But the

---

[21]    A "plaintiff may prevail on a claim for retaliation even when the underlying conduct complained of was not in fact unlawful so long as [he] can establish that [he] possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated the law." *Kelly*, 716 F.3d at 16 (internal quotation marks, citations and brackets omitted).  But a plaintiff may not rely on "just any law — the plaintiff is required to have had a good faith, reasonable belief that [he] was opposing an employment practice made unlawful by Title VII." *Id.* at 14 (internal quotation marks, citations and brackets omitted).  Plaintiff's belief that the NYPD was engaging in unlawful discriminatory activity was undoubtedly held in good faith.  However, Plaintiff's belief that the NYPD was violating Title VII — or the NYSHRL — cannot be considered objectively reasonable because neither statute prohibits the actions Plaintiff challenged in his NYPD Complaint.  *See Manoharan*, 842 F.2d at 594.

record does not show that the DOC obstructed or hindered Plaintiff's application in any way.  After Plaintiff presented medical records demonstrating that he was physically able to perform the duties of a correction officer, the DOC promptly reinstated his application; after Plaintiff complained about one of the investigators assigned to work on his application, the DOC chose a new investigator to work with Plaintiff; and — perhaps most significantly, given Plaintiff's difficulty receiving written correspondence — after scheduling the agility test, the DOC communicated with Plaintiff by telephone to ensure that Plaintiff understood the next steps in the application process.  On the whole, the record demonstrates that the DOC was solicitous and accommodating of Plaintiff, whose diligence in pursuing his application was inconstant and subject to extended periods of hiatus.  To the extent an adverse employment action took place, it was the product of Plaintiff's failure to pursue with diligence his application; no causal link between that action and the NYPD Complaint is discernable under these circumstances.  Accordingly, because Plaintiff cannot satisfy the first or fourth element of his prima facie case of retaliation, Defendants' motion for summary judgment with respect to the retaliation claims under Title VII and NYSHRL is granted.

### b.    Plaintiff's NYCHRL Claims

Retaliation claims under the NYCHRL cover a broader range of conduct. "[T]o prevail on a retaliation claim under the NYCHRL, the plaintiff must show that [he] took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a

person from engaging in such action." *Mihalik* v. *Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013) (internal citation omitted).  As with Title VII and the NYSHRL, "the NYCHRL require[s] a causal connection between an adverse act and a protected activity to prove a retaliation claim." *Dudley* v. *New York City Hous. Auth.*, No. 12 Civ. 2771 (PGG), 2014 WL 5003799, at *25 (S.D.N.Y. Sept. 30, 2014); *see also Bloomberg L.P.*, 967 F. Supp. 2d at 862 ("[T]he NYCHRL['s] … broader standard [for retaliation] does not absolve [plaintiff] from putting forth evidence tending to show a causal connection between [his] action[s] opposing [defendants'] alleged discrimination and the alleged adverse actions.").  As discussed *supra*, Plaintiff is unable to establish *any* causal connection between the filing of the NYPD Complaint and an adverse action.  Accordingly, Defendants' motion for summary judgment as to Plaintiff's claims for retaliation under Title VII, the NYSHRL, and the NYCHRL is granted.

### 4.   Plaintiff's Claims Are Not Barred by the NYSHRL or NYCHRL Election of Remedies Provisions

Although the Court has determined that the arguments Defendants advanced in their papers warrant summary judgment with respect to Plaintiff's NYSHRL and NYCHRL claims, the Court will also consider *sua sponte* whether any of Plaintiff's claims are barred by so-called "election of remedies" provisions.  If any of Plaintiff's claims is barred by these provisions, the Court would lack subject matter jurisdiction to hear that claim.  *Moodie* v. *Fed. Reserve Bank of N.Y.*, 58 F.3d 879, 882 (2d Cir. 1995) ("[Section] 297(9) [of the NYSHRL] deprives the district court of subject matter jurisdiction[.]"); *York* v.

32

*Ass'n of Bar of City of N.Y.*, 286 F.3d 122, 127 (2d Cir. 2002) ("[B]y the terms of

the statute and code, respectively, the [NYSHRL] and [NYCHRL] claims, once

brought before the NYSDHR, may not be brought again as a plenary action in

another court."); *see also Gonzalez* v. *Thaler*, 132 S. Ct. 641, 648 (2012) ("When

a requirement goes to subject-matter jurisdiction, courts are obligated to

consider *sua sponte* issues that the parties have disclaimed or have not

presented.").  "The election of remedies bar … precludes consideration of any

claim — whether brought under the NYSHRL or the NYCHRL — arising out of

the same incident on which [Plaintiff's] SDHR complaint was based."  *Higgins* v.

*NYP Holdings, Inc.*, 836 F. Supp. 2d 182, 188 (S.D.N.Y. 2011).[22]

Even though the form of discrimination alleged in Plaintiff's SDHR

complaints and in his Complaint are not the same, Plaintiff's claims can be

---

[22]    The NYSHRL and the NYCHRL provide that an individual who files a complaint with the
SDHR waives his right to sue in court. Section 297(9) of the NYSHRL provides in
relevant part:

> Any person claiming to be aggrieved by an unlawful discriminatory
> practice shall have a cause of action in any court of appropriate
> jurisdiction … unless such person ha[s] filed a complaint hereunder or
> with any local commission on human rights … provided that, where the
> division has dismissed such complaint on the grounds of administrative
> convenience, on the grounds of untimeliness, or on the grounds that the
> election of remedies is annulled, such person shall maintain all rights to
> bring suit as if no complaint had been filed with the division.

N.Y. Exec. Law § 297(9).  Similarly, Section 8-502(a) of the NYCHRL provides in
pertinent part:

> Except as otherwise provided by law, any person claiming to be aggrieved
> by an unlawful discriminatory practice as defined in chapter one of this
> title or by any act of discriminatory harassment or violence as set forth in
> chapter six of this title shall have a cause of action in any court of
> competent jurisdiction … unless such person has filed a complaint with
> the city commission on human rights or with the state division of human
> rights with respect to such alleged unlawful discriminatory practice or act
> of discriminatory harassment or violence.

N.Y.C. Admin. Code § 8-502(a).

barred if there is "a sufficient identity of issue … between the complaint before the division and the instant claim." *Musaji* v. *Banco do Brasil*, No. 10 Civ. 8541 (RJH), 2011 WL 2507712, at *5 (S.D.N.Y. June 21, 2011) (citing *Spoon* v. *Am. Agriculturalist, Inc.*, 478 N.Y.S.2d 174, 175 (3d Dep't 1984)); *see also Higgins*, 836 F. Supp. 2d at 189 (finding amendment of the complaint would be futile where plaintiff "presented the[] same operative events to the SDHR").

In the instant case, the Court does not find that Plaintiff's claims are barred by his choice to file his two SDHR complaints.  Plaintiff has alleged a different set of facts — regarding discrimination based on race, color, and disability — than those brought before the SDHR.  *See Jackson* v. *NYS Dep't of Labor*, 709 F. Supp. 2d 218, 225 n.3 (S.D.N.Y. 2010) ("The Court … may exercise jurisdiction over [plaintiff's] NYSHRL and NYCHRL claims to the extent that they are based on conduct not alleged in her SDHR Complaint[.]  Because courts interpret the scope of claims precluded by the election of remedies broadly, [plaintiff] would need to allege a different set of facts from those she alleged in her SDHR Complaint.").  Specifically, Plaintiff now alleges that the NYPD did not mail him his psychological disqualification letters because of his race and color, and that he was not hired for the job of police officer because of a perceived disability.  Putting aside the merits of these claims or the plausibility of Plaintiff's allegations, these facts are sufficiently different than those presented before the SDHR to avoid the application of the election of remedies bar.

### 5.     Plaintiff Cannot Establish a Due Process Violation

Finally, Plaintiff alleges that Defendants' failure to send him correspondence regarding his psychological disqualifications constituted a violation of due process.  (*See* Petty Dep. 190; Pl. Opp. 2).  As Defendants correctly point out, Plaintiff's due process claim turns on his ability to demonstrate that he obtained a constitutionally-protected property or liberty interest in the positions with the NYPD or DOC.  (Def. Br. 21).  Defendants argues that Plaintiff's prospective employment with the City cannot constitute such an interest (*id.*), and these arguments have merit.

In order to establish a property interest giving rise to a procedural due process claim, a plaintiff must demonstrate "a legitimate claim of entitlement" to the property at issue.  *Cancel* v. *New York City Human Res. Admin./Dep't of Soc. Servs.*, 527 F. App'x 42, 44 (2d Cir. 2013) (summary order) (quoting *Bd. of Regents of State Colleges* v. *Roth*, 408 U.S. 564, 577 (1972)).  Whether a plaintiff has a cognizable interest, or instead "only an unprotected unilateral expectation of employment" is guided by state law.  *Donato* v. *Plainview-Old Bethpage Cent. School Dist.*, 96 F.3d 623, 629 (2d Cir. 1996).  "Under New York law, a person successfully passing a competitive Civil Service examination does *not* acquire any 'legally protectable interest' in an appointment to the position for which the examination was given."  *Cancel* v. *New York City Human Res. Admin./Dep't of Soc. Servs.*, No. 11 Civ. 9725 (PKC), 2014 WL 5508487, at *4 (S.D.N.Y. Oct. 31, 2014) (quoting *Andriola* v. *Ortiz*, 82 N.Y.2d 320, 324 (1993) (emphasis in original)); *see also Abramson* v. *Pataki*, 278 F.3d 93, 100 (2d Cir.

2002) ("Ordinarily, there is no constitutionally protected property interest in prospective government employment."). Accordingly, Plaintiff's allegation that he was denied a job with the City fails to implicate a cognizable property interest.

Furthermore, with respect to Plaintiff's liberty interest, "[i]t stretches the concept too far to suggest that a person is deprived of 'liberty' when he simply is not []hired in one job but remains as free as before to seek another." *Roth*, 408 U.S. at 575. "[I]t is only when the challenged action effectively prohibits one from engaging in a profession, or pursuing any job in a given field that there is a deprivation entitled to protection." *Cityspec, Inc.* v. *Smith*, 617 F. Supp. 2d 161, 169 (E.D.N.Y. 2009). In the instant action, Plaintiff remains free to seek other jobs as a police officer or correction officer. Accordingly, Plaintiff has failed to allege a cognizable property or liberty interest, and his due process claim must be dismissed as a matter of law.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED. The Clerk of Court is directed to terminate Docket Entry 36, and to mark the case as closed.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith; therefore, *in forma pauperis*

status is denied for purposes of an appeal.   *See Coppedge* v. *United States*, 369

U.S. 438, 444-45 (1962).

          SO ORDERED.

Dated:        November 25, 2014
              New York, New York

                                        _____
                                          KATHERINE POLK FAILLA
                                          United States District Judge


---

*A copy of this Order was mailed by Chambers to:*

Darren Lawrence Petty
1699 Chattam Parkway
Apt. 1421-A
Savannah, GA 31405

---